FILED TPA INTAKE USBC
3 NOV 2025 AM 9:58

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | Case Number: 8:25-bk-07792-RCT |
| WILLIAM PAUL DEBOSKEY | Chapter 13 |
| Debtor | |

WILLIAM PAUL DeBOSKEY,

     Debtor-in-Possession,

     Plaintiff,

v.                            Adversary No.

RED STICK ACQUISITIONS, LLC;

CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB
as a Trustee for Stanwich Mortgage Loan Trust, Series 2012-13;

BRYN MAWR TRUST COMPANY of Delaware;

WILMINGTON SAVINGS FUND SOCIETY, FSB,
not in its individual capacity, but solely as Trustee for
Palisades Trust;

GOSHEN MORTGAGE LLC, as separate trustee
for GDBT-1 TRUST 2011-1;

BRUCE CRAWFORD, Individually;

and ALL UNKNOWN CLAIMANTS,

     Defendants

## ADVERSARY COMPLAINT TO DETERMINE VALIDITY, PRIORITY, OR EXTENT OF LIEN AND TO QUIET TITLE

**COMES NOW** the Plaintiff, William P. DeBoskey, appearing pro se, and brings this Adversary Complaint to Quiet Title and for Declaratory Relief concerning his homestead property. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), as it concerns the determination of the validity, priority, or extent of a lien on estate property, and under applicable provisions of Chapter 65 and § 86.011, Florida Statutes. Plaintiff seeks a judicial declaration and quieting title to remove a void and defective lien recorded against his homestead and to confirm the absence of any valid mortgage interest held by the Defendants.

## I. INTRODUCTION AND NATURE OF PROCEEDING.

1. This is an adversary proceeding brought pursuant to 28 U.S.C. §§ 1334 and 2201, 11 U.S.C. §§ 105, 506, and 544, and Federal Rules of Bankruptcy Procedure 7001(2) and 7001(9), to determine the validity, extent, and priority of a purported mortgage lien asserted by Defendants against the Debtor's homestead property, and to quiet title to said property in favor of the Debtor.

2. Plaintiff seeks a declaratory judgment that the mortgage and all assignments thereof are null, void, unenforceable, and constitute a cloud on title, due to, inter alia:

    a.  a defective legal description on the face of the mortgage instrument;

    b.  failure of the mortgage to establish a lien on the subject property;

    c.  lack of standing and failure of Defendants to establish a valid chain of title; and

    d.  recorded disclaimers or failures to assert any interest.

3.  Plaintiff further seeks an order quieting title, declaring that none of the Defendants possess any valid lien, claim, or encumbrance against the property, and removing all such instruments from the property records.

## II. JURISDICTION AND VENUE.

4.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 because this proceeding arises in and relates to a case under Title 11 of the United States Code.

5.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), as it concerns the determination of the validity, priority, or extent of a lien.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

## III. PARTIES.

7.  Plaintiff, William P. DeBoskey, is the Debtor and Debtor-in-Possession in the above-captioned bankruptcy case and is the fee simple owner of the subject real property described herein.

8.  Defendant Red Stick Acquisitions, LLC is a limited liability company that has asserted or may assert an interest in the purported mortgage at issue.

9.  Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as a Trustee for Stanwich Mortgage Loan Trust, Series 2012-13, has been listed in the chain of assignments and may claim an interest in the subject mortgage.

10. Defendant Bryn Mawr Trust Company is a Delaware Corporation and successor by merger of Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2012-2013 named based on its potential role as trustee, assignee, or custodian for one or more of the above entities and may claim an interest in the subject mortgage.

11. Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Trustee for Palisades Trust, who has contacted the Plaintiff and asserted an interest, may claim an interest in the subject mortgage.

12. Defendant Goshen Mortgage, LLC. as separate trustee for GDBT-1 Trust 2011-1, has previously appeared or been named as an assignee or assignor in the alleged chain of title and may claim an interest in the subject mortgage.

13. Defendant Bruce Crawford is named individually due to his assertion of ownership and/or his management, or control of Red Stick Acquisitions, LLC, and his individual direct claims to the alleged mortgage or underlying debt and may claim an interest in the subject mortgage.

14. All Unknown Claimants, including unknown heirs, creditors, or assignees or assignors of the above-named entities, are included to ensure that any adverse interest in the property is forever barred and extinguished.

## IV. FACTUAL ALLEGATIONS.

15. Plaintiff is the record owner of the following real property located at 27035 Old Spring Lake Road, Brooksville, Florida 34602 in Hernando County, Florida (hereinafter referred to as the "Subject Property") and more particularly described as:

> THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, LESS THE EAST 65.57 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4. AND LESS THE WEST 15.0 FEET OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, ALL IN SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST, HERNANDO COUNTY, FLORIDA; SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS OF RECORD.

16. On or about November 2005, a mortgage was recorded purporting to encumber Plaintiff's property. This document is attached as Exhibit 1. However, that

mortgage contains a defective legal description which fails to identify the subject property with reasonable certainty and does not describe Plaintiff's homestead.

17. Specifically, the legal description in the recorded mortgage reads as follows:

> THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, LESS THE EAST 65.57 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4. AND LESS THE WEST 15.0 FEET OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4, ALL IN SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST, HERNANDO COUNTY, FLORIDA; SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS OF RECORD.

18. Plaintiff alleges that the recorded mortgage describes land located within the Southwest Quarter of Section 10, while the Subject Property lies entirely within the Southeast Quarter of Section 10. The two tracts are separate and approximately one-quarter mile apart. On that basis, Plaintiff alleges the recorded instrument does not identify or encumber the Subject Property.

19. Despite the defective mortgage, various Defendants have initiated or continued attempts to enforce the purported lien through foreclosure proceedings in state court, asserting rights that do not legally exist and causing a continuing cloud on Plaintiff's title.

20. Recorded assignments of the mortgage further demonstrate breaks in the chain of title, improper transfers, or transfers made without legal authority or standing.

21. The Plaintiff in this action filed a quiet-title action (Case No. 25-CA-476), in Hernando County, Florida on May 16, 2025. That action has been stayed by the filing of the Bankruptcy Petition. A copy of that complaint is attached as Exhibit 2. In that case, both the original lender, Truist Bank (successor by merger to SunTrust Mortgage, Inc.), and the original mortgagee of record, Mortgage Electronic Registration Systems, Inc. ('MERS'), each filed recorded disclaimers, under penalty of perjury, expressly renouncing any interest in the mortgage or underlying note. These disclaimers are attached as Exhibit 3.

22. Further, in the state court quiet title case, numerous entities in the alleged chain of title including GDBT 1- Trust 2011-1, Goshen Mortgage, LLC. Bryn Mawr Trust Company of Delaware, successor by merger of Christian Trust, and Bruce Crawford individually, have all been clerk-defaulted, and none of these parties has filed a response denying the allegations of the state court complaint. These defaults, attached as Exhibit 4, leave Plaintiff's allegations uncontested and further call into question any claim of enforceable interest in the mortgage or note.

23. The state foreclosure proceedings have been actively contested by Plaintiff on the basis of the defective legal description and resulting failure of lien attachment.

That action remains unresolved and is now stayed by operation of Plaintiff's bankruptcy filing.

24. Plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on October 22, 2025, commencing this bankruptcy case and triggering the automatic stay under 11 U.S.C. § 362.

25. Plaintiff alleges that no cure or reformation is possible under Fla. Stat. § 689.041 because the mortgage never attached to the homestead property.

26. Plaintiff alleges, at the time of the bankruptcy filing, no Defendant possessed a valid, enforceable lien on the Property.

27. Plaintiff brings this adversary proceeding to obtain a declaratory judgment that the purported mortgage and all assignments thereof are void and unenforceable, to quiet title to the Property, and to determine that no Defendant holds a secured claim.

## COUNT I – DECLARATORY JUDGMENT
### (Invalidity of Purported Mortgage Lien).

28. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

29. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the validity of the purported mortgage and whether any Defendant holds a secured interest in the Property.

30. Plaintiff alleges that the recorded mortgage contains a defective legal description which fails to encumber the Property, and therefore, Plaintiff seeks a judicial declaration that the recorded mortgage is void and without legal effect under Florida law.

31. Defendants claim or may claim rights under the purported mortgage, creating a present cloud on Plaintiff's title.

32. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

    a. The purported mortgage is void ab initio;

    b. The mortgage does not constitute a valid lien against the Property;

    c. None of the Defendants possess any secured interest in the Property.

## COUNT II – QUIET TITLE
### (Florida Statutes Chapter 65, Asserted
### Under Supplemental Jurisdiction).

33. Plaintiff realleges and incorporates paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff is the fee-simple owner in actual possession of the real property described above.

35. Defendants claim or appear to claim an adverse interest in the Property based upon a mortgage recorded in November 2005 and subsequent assignments, even though the mortgage is void due to a defective legal description and breaks in the chain of title.

36. Such adverse claims constitute a continuing cloud upon Plaintiff's title.

37. Pursuant to Chapter 65, Florida Statutes, and this Court's jurisdiction under 28 U.S.C. §§ 1334 and 1367, Plaintiff seeks a decree quieting title to the Property, declaring that Defendants hold no right, title, lien, or interest therein, and permanently barring them from asserting any adverse claim. This claim forms part of the same case or controversy as the core lien-determination and lien-avoidance issues under 11 U.S.C. §§ 506 and 544. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because the bankruptcy case and the Property are administered here.

## COUNT III – DETERMINATION OF VALIDITY,
## PRIORITY, OR EXTENT OF LIEN
## (11 U.S.C. § 506; Rule 7001(2)).

38. Plaintiff realleges and incorporates paragraphs 1 through 37 as if fully set forth herein.

39. Defendant Red Stick Acquisitions, LLC, and/or other Defendants may assert, or attempt to assert, a secured claim or file a proof of claim purporting to be secured by the Property.

40. Pursuant to 11 U.S.C. § 506 and Fed. R. Bankr. P. 7001(2), this Court has authority and the duty to determine the validity, priority, and extent of any such lien or secured claim.

41. Based on the foregoing factual allegations, Plaintiff seeks a judicial declaration that no Defendant holds an enforceable secured claim against the Property and seeks a determination of the validity, priority, or extent of any claimed lien under 11 U.S.C. § 506.

42. Plaintiff requests a determination that any proof of claim or asserted lien is invalid and that such claim, if any, shall be treated as unsecured or disallowed in its entirety.

## COUNT IV - AVOIDANCE OF LIEN
### (11 U.S.C. § 544(a) - Strong-Arm Powers).

43. Plaintiff realleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Under 11 U.S.C. § 544(a)(1) and (a)(3), Plaintiff, as Debtor-in-Possession, possesses the rights and powers of both a hypothetical judicial lien creditor and a bona fide purchaser of real property as of the petition date.

45. Pursuant to 11 U.S.C. § 544(a)(1) and (a)(3), Plaintiff, as Debtor-in-Possession, seeks to avoid the purported mortgage lien and all related assignments because, due to the defective legal description and recording irregularities, such instruments are avoidable by a hypothetical judicial lien creditor or bona fide purchaser of real property as of the petition date. Plaintiff further seeks, pursuant to 11 U.S.C. § 551, to have the avoided lien and assignments preserved for the benefit of the bankruptcy estate and declared void and of no effect as against the estate.

## COUNT V – INJUNCTIVE RELIEF
### (Fed. R. Bankr. P. 7065).

46. Plaintiff realleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

47. Defendants' continued assertion or maintenance of a purported lien or other claim against the Property constitutes an ongoing cloud on title, interferes with

administration of the bankruptcy estate, and impairs Plaintiff's ability to propose and complete a feasible Chapter 13 plan.

48. Plaintiff has no adequate remedy at law because monetary damages cannot restore clear title to the Property or safeguard the orderly administration of the bankruptcy estate. Irreparable harm will result absent injunctive relief to prevent continued interference with property of the estate, which lies within this Court's exclusive jurisdiction under 28 U.S.C. § 1334(e)(1) and constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

49. Pursuant to Fed. R. Bankr. P. 7065 and the Court's equitable authority under 11 U.S.C. § 105(a), Plaintiff requests entry of a permanent injunction prohibiting Defendants from asserting, recording, maintaining, or enforcing any lien, claim, or interest against the Property, or taking any action inconsistent with this Court's exclusive jurisdiction, the avoidance of the purported lien under 11 U.S.C. § 544, or any judgment determining the validity, extent, or priority of such lien and quieting title to the Property.

## COUNT VI - NOTICE OF PLAINTIFF'S PROTECTED STATUS
### Florida Statute § 825.103
### (For Jurisdictional and Equitable Purposes Only).

50. Plaintiff is an "elderly person" within the meaning of Fla. Stat. § 825.101(4), being over the age of 60. The Florida Legislature has expressly recognized elderly

persons as a vulnerable class subject to exploitation, including the wrongful deprivation or encumbrance of property rights. Accordingly, any claimed lien or attempt to cloud title to Plaintiff's homestead warrants heightened scrutiny in equity and under Florida law.

51. Florida Statute § 825.103 criminalizes the exploitation of an elderly person's property, assets, or real estate interests. Plaintiff does not assert a cause of action or seek civil damages under that statute in this proceeding. This allegation is provided solely to place the Court on notice of Plaintiff's protected legal status so that it may consider that status when evaluating the validity, equity, and good faith of any asserted lien or encumbrance against Plaintiff's homestead property. Plaintiff expressly reserves all substantive rights and remedies under Chapter 825, including any civil or criminal claims, statutory damages, injunctive relief, or relief under 11 U.S.C. § 105(a), for a future proceeding if warranted by the evidence.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

A. Declaring that the purported mortgage and all assignments thereof are null, void, and unenforceable;

B. Quieting title to the Property in favor of Plaintiff;

C. Determining that no Defendant holds a valid or enforceable lien or secured claim against the Property;

D. Avoiding the purported mortgage lien and related assignments pursuant to 11 U.S.C. § 544, and preserving any avoided interests for the benefit of the estate under 11 U.S.C. § 551;

E. Permanently enjoining Defendants, pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7065, from asserting, recording, or enforcing any lien, claim, or interest against the Property;

F. Directing that any judgment entered in this action be recorded in the official records of Hernando County, Florida;

G. Acknowledging Plaintiff's status as an elderly person under Fla. Stat. § 825.101(4), not as a separate cause of action under Chapter 825, but solely for purposes of the Court's equitable discretion, protection of homestead rights, and any future protective measures the Court deems appropriate;

H. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 9015 of the Federal Rules of Bankruptcy Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

To the extent required by 28 U.S.C. § 157(e), Plaintiff expressly does not consent to the entry of final judgment or the conduct of a jury trial by the Bankruptcy Court and reserves the right to have any such jury trial conducted in the United States District Court.

# DECLARATION

I, William Paul DeBoskey, being over the age of eighteen (18) and otherwise competent to testify, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1. I am the Plaintiff and Debtor-in-Possession in this action.
2. I have personal knowledge of the facts stated in this Adversary Complaint unless otherwise indicated, and those facts are true and correct to the best of my knowledge, information, and belief.
3. I make this declaration freely and voluntarily, fully aware that false statements may be punishable under federal law, including 18 U.S.C. §§ 152, 157, and 1621.
4. I further understand that this sworn declaration is made in connection with proceedings involving my Florida homestead and rights protected under both federal bankruptcy law and Florida Statute § 825.103.

Executed on November 3, 2025.                    Respectfully submitted,


                                                                 *William P. DeBoskey*
                                                                 William P. ~~DeBoskey~~ – Pro Se
                                                                 27035 Old Spring Lake Rd.
                                                                 Brooksville, Florida 34602
                                                                 (352) 263-3384
                                                                 bill27035@gmail.com

# Exhibit 1

**R**

Return To:
Gulf Coast Title Co., Inc.
111 N. Main Street
Brooksville, FL 34601

T-66339

This document was prepared by:
PAM KONEWKO
SUNTRUST MORTGAGE, INC.
P.O. BOX 156, BROOKSVILLE, FL 34605-0156

Doc# 2005097185
Hernando County, Florida
11/02/2005   6:34AM
KAREN NICOLAI, Clerk
RECORDING FEES         $      171.50
MORTGAGE DOC STAMP     $    1,275.40
INTANGIBLE TAX COLLECTION      728.80
11/02/2005          Deputy Clk

OFFICIAL RECORDS
BK: 2134 PG: 1603

---

AP#: DEBOS0034595223                 —[Space Above This Line For Recording Data]—
LN#: 0034595223              **MORTGAGE**

MIN 1000104-0034595223-6

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY _____ D.C.

**DEFINITIONS**   THIS 18 DAY OF JULY 2025

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    October 25, 2005    ,
together with all Riders to this document.
**(B) "Borrower"** is WILLIAM P. DEBOSKEY and LORI E. DEBOSKEY, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is SUNTRUST MORTGAGE, INC.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010  1/01

-6A(FL) (0005)

Page 1 of 16      MW 05/00      Initials: WPD  LED

VMP MORTGAGE FORMS - (800)521-7291



AP# DEBOS0034595223
LN# 0034595223

Lender is a Virginia Corporation
organized and existing under the laws of          THE STATE OF VIRGINIA
Lender's address is  901 Semmes Avenue, Richmond, VA 23224

(E) "Note" means the promissory note signed by Borrower and dated          October 25, 2005
The Note states that Borrower owes Lender Three Hundred Sixty Four Thousand Four
Hundred and no/100                                                       Dollars
(U.S. $ 364,400.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than          November 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: WPN  LED

VMP -6A(FL) (0005)                    Page 2 of 16                    Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1605

AP#: DEBOS0034595223
LN#: 0034595223

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County [Type of Recording Jurisdiction] of                    Hernando              [Name of Recording Jurisdiction]:

THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE
NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, LESS THE EAST
65.57 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST
1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST
1/4 OF THE SOUTHEAST 1/4, AND LESS THE WEST 15.0 FEET OF TH SOUTH 1/2 OF
THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4, ALL IN THE
SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST, HERNANDO COUNTY, FLORIDA.
SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS OF RECORD.

Parcel ID Number: R10 423 20 0000 0090 0010          which currently has the address of
27035 OLD SPRING LAKE RD                                                     [Street]
BROOKSVILLE                                          [City], Florida    34602    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: WPN LED

-6A(FL) (0005)                    Page 3 of 16                    Form 3010   1/01

OFFICIAL RECORDS
BK: 2134 PG: 1606

AP#: DEBOS0034595223
LN#: 0034595223

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Initials: _WPD_ _GED_

OFFICIAL RECORDS
BK: 2134 PG: 1607

AP#: DEB0S0034595223
LN#: 0034595223

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0006)                      Page 5 of 16                      Initials: WPD LBD                      Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1608

AP#: DEB0S0034595223
LN#: 0034595223

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: *WPD* *LED*

AP#: DEBOS0034595223
LN#: 0034595223

OFFICIAL RECORDS
BK: 2134 PG: 1609

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials: WPD  GAD

OFFICIAL RECORDS
BK: 2134 PG: 1610

AP#: DEBOS0034595223
LN#: 0034595223

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _WPO_  _W_

OFFICIAL RECORDS
BK: 2134 PG: 1611

AP#:DEBOS0034595223
LN#:0034595223

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

AP#: DEBOS0034595223
LN#: 0034595223

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: ___

OFFICIAL RECORDS
BK: 2134 PG: 1613

AP#: DEBOS0034595223
LN#: 0034595223

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

OFFICIAL RECORDS
BK: 2134 PG: 1614

AP#: DEBOS0034595223
LN#: 0034595223

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

AP#: DEBOS0034595223
LN#: 0034595223

OFFICIAL RECORDS
BK: 2134 PG: 1615

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

OFFICIAL RECORDS
OFFICIAL RECORDS
BK: 2134 PG: 1616

AP#: DEBOS0034595223
LN#: 0034595223

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials: ___

AP#: DEBOS0034595223
LN#: 0034595223

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Ami Ratliff_
AMI RATLIFF

_William P. DeBoskey_____ (Seal)
WILLIAM P. DEBOSKEY                    -Borrower

27035 OLD SPRING LAKE RD. BROOKSVILLE. FL 34602
                                        (Address)

_Gretchen Wilson_
Gretchen Wilson

_Lori E DeBoskey_____ (Seal)
LORI E. DEBOSKEY                    -Borrower

27035 OLD SPRING LAKE RD. BROOKSVILLE. FL 34602
                                        (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

                          (Address)

                          (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

                          (Address)

                          (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

                          (Address)

                          (Address)

OFFICIAL RECORDS
BK: 2134 PG: 1618

AP#: DEBOS0034595223
LN#: 0034595223

**STATE OF FLORIDA,**                             Hernando **County ss:**
The foregoing instrument was acknowledged before me this      Oct. 25, 2005              by
William P. Deboskey & Lori E. Deboskey

who is ~~personally known to me~~ or who has produced   FLORIDA DR. LIC          as identification.

Ami Ratliff
Notary Public

AMI RATLIFF
MY COMMISSION # DD 451400
EXPIRES: August 28, 2009
Bonded Thru Notary Public Underwriters

Initials: WPD LED

-6A(FL) (0005)                    Page 16 of 16                    Form 3010   1/01

OFFICIAL RECORDS
BK: 2134 PG: 1619

AP# DEBOS0034595223
LN# 0034595223

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 25th day of October, 2005
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to SUNTRUST MORTGAGE, INC.,
         A VIRGINIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:
         27035 OLD SPRING LAKE RD        ,BROOKSVILLE,FL 34602
                      [Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of      6.3750       %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of    November, 2015    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."  Current Index  4.5510

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument
Form 3187 6/01**
-16BR (0401).01
Page 1 of 4             Initials: ___
VMP Mortgage Solutions, Inc.
         (800)521-7291

OFFICIAL RECORDS
BK: 2134 PG: 1620

AP# DEBOS0034595223
LN# 0034595223

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter                                                                            percentage points ( 2.2500        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.3750   % or less than   2.2500      %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.3750       %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Initials: _WPS LED_

OFFICIAL RECORDS
BK: 2134 PG: 1621

AP# DEBOS0034595223
LN# 0034595223

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Initials: _WPD_  _LED_

-168R (0401).01          Page 3 of 4          Form 3187 6/01

OFFICIAL RECORDS
BK: 2134 PG: 1622

AP# DEBOS0034595223
LN# 0034595223

*which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)          _William P. DeBoah_____ (Seal)
           -Borrower                   WILLIAM P. DEBOSKEY            -Borrower

_____ (Seal)          _Lori E DeBoskey_____ (Seal)
           -Borrower                   LORI E. DEBOSKEY              -Borrower

_____ (Seal)          _____ (Seal)
           -Borrower                                                 -Borrower

_____ (Seal)          _____ (Seal)
           -Borrower                                                 -Borrower

# Exhibit 2

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR HERNANDO COUNTY, FLORIDA

WILLIAM P. DEBOSKEY

      Plaintiff

v.

     Case #: 25-CA-0474

TRUIST FINANCIAL CORPORATION; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; THE
BRYAN MAWR TRUST COMPANY OF DELAWARE;
GOSHEN MORTGAGE LLC.; GOSHEN MORTGAGE LLC,
as separate trustee for GDBT-1 TRUST 2011-1; REDSTICK
ACQUISITIONS LLC.; and BRUCE CRAWFORD, an individual.

      Defendants

_____/

### VERIFIED COMPLAINT TO QUIET TITLE
### AND FOR DECLARATORY RELIEF

COMES NOW the Plaintiff, WILLIAM P. DEBOSKEY, in proper person, hereby sues the

Defendants to quiet title and for declaratory relief pursuant to Chapter 65, Florida Statutes, and

Florida Statutes § 86.011 and alleges:

### NATURE OF CLAIM

1.  This is an action to quiet title and for declaratory relief pursuant to Chapter 65,

Florida Statutes, and Florida Statutes § 86.011 respectively.

### JURISDICTION AND VENUE

2.  The matter in controversy exceeds $30,000, exclusive of interest, costs and

attorney's fees and this Court has jurisdiction over this action pursuant to F.S. § 65.011

FILED FOR RECORD
DOUG CHORVAT CLERK
HERNANDO COUNTY, FL
2025 MAY 16 AM 8:46

3.   Venue is proper in Hernando County Florida, pursuant to F.S. § 47.011, because the subject property is located in this county and the claims asserted concern real property is located within this jurisdiction.

4.   Plaintiff, William P. DeBoskey, is a natural person residing in Hernando County, Florida, and is the fee simple owner of the real property that is the subject of this action.

5.   The Defendants, TRUIST FINANCIAL CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BRYAN MAWR TRUST COMPANY OF DELAWARE; GOSHEN MORTGAGE LLC., GOSHEN MORTGAGE LLC, as separate trustee for GDBT-1 TRUST 2011-1; at all relevant times, are or were corporations, limited liability companies, or financial institutions authorized to conduct business in Florida.

6.   The Defendant, REDSTICK ACQUISITIONS, LLC. alleges to currently own the mortgage by assignment as recorded in the official records of Hernando County. (A copy of this assignment is attached hereto as exhibit 1).

7.   The Defendant, Bruce Crawford has alleged an ownership interest as the owner and servicer of the mortgage in a meeting held on November 12, 2024.

## PARTIES

8.   TRUIST FINANCIAL CORPORATION ("TRUIST") is a publicly traded corporation. It is the successor by merger of SunTrust Mortgage, Inc., SunTrust Bank, and SunTrust Bank, N.A. (hereinafter referred to as the "SunTrust entities"). TRUIST may claim an interest in the subject matter mortgage by virtue of a series of assignments executed by and between the SunTrust entities (copies of these assignments are attached hereto as exhibit 2).

9.   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS"), is a Delaware corporation with its principal place of business in Georgia. MERS may claim an interest

in the subject matter mortgage as a nominee for the SunTrust entities and its' successors (A copy is attached hereto as exhibit 3).

10.  THE BRYN MAWR TRUST COMPANY OF DELAWARE ("BRYN MAWR") is a Delaware Corporation and a successor by merger of Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2012-2013 ("CHRISTIANA TRUST"). Bryn Mawr may claim an interest in the subject matter mortgage by virtue of an assignment executed in January 2013 purported to transfer the mortgage from SunTrust Bank to Christiana Trust (A copy is attached hereto as exhibit 4).

11. GOSHEN MORTGAGE LLC, ("GOSHEN") is a Delaware corporation with a principal place of business in Connecticut. Goshen may claim an interest in the subject matter mortgage by virtue of an assignment executed in 2014 (A copy is attached as exhibit 5).

12. GOSHEN MORTGAGE LLC, ("GOSHEN") as separate trustee for GDBT-1 TRUST 2011-1 is a Delaware corporation with a principal place of business in Connecticut. Goshen may claim an interest in the subject matter mortgage by virtue of an assignment executed in 2014 (A copy is attached as exhibit 5).

13. REDSTICK ACQUISITIONS LLC. ("REDSTICK") is an alleged Florida LLC,. Redstick's principal place of business is unknown but may claim an interest in the subject matter mortgage by virtue of an assignment executed in 2018 (A copy is attached hereto as exhibit 6).

14. BRUCE CRAWFORD, an individual, who resides in the State of Florida and has represented himself as the owner and servicer of the subject mortgage. Mr. Crawford is allegedly the primary investor in Redstick. (A copy of a letter is attached as exhibit 7). Mr. Crawford may claim an interest as an owner of the subject mortgage and/or the primary investor in Redstick.

## <u>GENERAL ALLEGATIONS</u>

15. The Plaintiff, WILLIAM P. DEBOSKEY, owns the real property located at 27035 Old Spring Lake Road, Brooksville, Florida 34602 in Hernando County, Florida (hereinafter referred to as the "Subject Property") and more particularly described as:

> THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, LESS THE EAST 65.57 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4. AND LESS THE WEST 15.0 FEET OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, ALL IN SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST, HERNANDO COUNTY, FLORIDA; SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS OF RECORD.

16. A mortgage was recorded in the official records of Hernando County by a predecessor of defendant TRUIST FINANCIAL CORPORATION identified as SunTrust Mortgage, Inc. and defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. on November 2, 2005 (A copy is attached as exhibit 8).

17. The subject mortgage was not intended to encumber the subject property as described above.

18. The legal description in the Subject Mortgage is materially erroneous, as it describes a parcel that does not exist, or describes a parcel unrelated to Plaintiff, or contains such ambiguity or inaccuracy that the mortgage fails to encumber any legally identifiable real property.

19. Despite this fatal defect, a predecessor to the defendant TRUIST, SunTrust Bank, N.A. filed a foreclosure action, inclusive of a count to reform the legal description, in the Circuit Court of Hernando County on July 31, 2009 (Case # 2009-CA-002727).

20. After years of litigation, SunTrust Bank, N.A. nor the successors thereof, failed to proffer clear and convincing evidence to support reformation of the legal description contained in the mortgage.

21. The successor in interest, by virtue of assignment, from the SunTrust entities, Christiana Trust, voluntarily dismissed this case on April 16, 2014.

22. On May 26, 2016, the successor in interest to Christiana Trust, Defendant Goshen Mortgage filed a subsequent action for foreclosure in the Circuit Court of Hernando County containing the same fatal defect in the legal description of the subject matter mortgage (Case # 2016-CA-00676) as was contained in the previous action. This action was removed to Federal Court where it remains as of this day.

23. These foreclosure proceedings, collectively, have remained active for almost fifteen (15) years, yet no Plaintiff in those cases has been able to cure the defective legal description or provide competent evidence to establish a lien on the Subject Property.

24. During this time, Plaintiff has remained in actual, exclusive, continuous, and peaceful possession of the Subject Property.

25. The existence of the defective recorded mortgage and the long-standing foreclosure actions constitute a cloud on Plaintiff's title, impairing Plaintiff's ability to sell, refinance, or otherwise enjoy full ownership rights in the Subject Property.

## COUNT I – QUIET TITLE

26. Plaintiff realleges paragraphs 1 through 25 as set forth above.

27. This is an action to quiet title to the Subject Property pursuant to Chapter 65, Florida Statutes.

28. Plaintiff is in possession of the Subject Property and has legal and equitable title.

29. Defendant(s) claim an interest adverse to Plaintiff's title by virtue of the Subject Mortgage; however, such claim is invalid, defective, and clouding Plaintiff's title.

30. Plaintiff seeks a judicial declaration that Defendant(s) have no right, title, interest, lien, or claim against the Subject Property.

31. Plaintiff has no adequate remedy at law and seeks the equitable relief of quieting title.

32. In a subsequent filing, in accordance with F.S. 825.103, the Plaintiff intends to pursue all civil and criminal remedies against all parties acting within the relevant statute of limitations who have attempted to exploit the real property of the Plaintiff and deprive the Plaintiff of possession of the same using deception and intimidation.

## COUNT II – DECLARATORY RELIEF

33. Plaintiff realleges paragraphs 1 through 25 as set forth above.

34. A present controversy exists between Plaintiff and Defendant(s) regarding whether the subject mortgage constitutes a valid lien against the Subject Property.

35. The Plaintiff is in doubt as to his rights and legal obligations and is entitled to a declaration under Florida Statutes § 86.011 et seq.

36. The Plaintiff asserts that, due to the fatally defective legal description, the Subject Mortgage is null and void as to the Subject Property.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court enter a final judgment:

1. Declaring that Defendant(s) have no right, title, lien, or interest in or to the Subject Property;
2. Cancelling and discharging the Subject Mortgage of record as to the Subject Property;
3. Quieting title to the Subject Property in Plaintiff's name alone;
4. Ordering the Clerk to record a certified copy of the Final Judgment;

Quiet Title
Page 6

5. Declaring that the Subject Mortgage does not constitute a valid lien on the Subject Property;

6. Declaring that Plaintiff holds title to the Subject Property free and clear of any claim by Defendant(s);

7. Ordering that the mortgage be discharged and removed from the Official Records as to the Subject Property; and

8. Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Dated this 16th day of May 2025

William P. DeBoskey — *Pro Se*
27035 Old Spring Lake Rd.
Brooksville, Florida 34602
(352) 263-3384
bill27035@gmail.com

# VERIFICATION

STATE OF FLORIDA
COUNTY OF HERNANDO

BEFORE ME, the undersigned authority, personally appeared William P. DeBsokey, who, being duly sworn, deposes and says:

1. I am the Plaintiff in the above-styled action.
2. I have read the foregoing Verified Complaint to Quiet Title and for Declaratory Relief, and the facts alleged therein are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

William P. DeBoskey, Plaintiff

Sworn to and subscribed before me, by means of a physical presence this 15ᵗʰ day of May , 2025, by William Deboskey , who has produced a Florida Driver's License as identification.

Notary Public, State of Florida
My Commission Expires: November 25, 2027



Instr #2018045592 BK: 3607 PG: 1472, Filed & Recorded: 7/26/2018 4:08 PM ERL Deputy Clk, #Pgs:1
Don Barbee Jr,Clerk of the Circuit Court Hernando CO FL Rec Fees: $10.00

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23041 AVENIDA DE LA CARLOTA, #230
LAGUNA HILLS, CA 92653

### ASSIGNMENT OF MORTGAGE

LOAN #: ▮▮▮▮▮
FOR VALUABLE CONSIDERATION:
ASSIGNOR:          GDBT I TRUST 2011-1

ASSIGNOR ADDRESS:  411 WEST PUTNAM AVENUE
                   GREENWICH, CT 06830

HEREBY GRANTS, ASSIGNS, AND TRANSFERS TO:
ASSIGNEE:          RED STICK ACQUISITIONS, LLC

ASSIGNEE ADDRESS:  C/O KC WILSON AND ASSOCIATES
                   23041 AVENIDA DE LA CARLOTA, #230
                   LAGUNA HILLS, CA 92653

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE:
DATED:               10/25/05
ORIGINAL LOAN AMOUNT: $364,400.00
MORTGAGOR/BORROWER:  WILLIAM P DEBOSKEY AND LORI E DEBOSKEY
ORIGINAL MORTGAGEE:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS
                     NOMINEE FOR THE ORIGINAL LENDER, ITS SUCCESSORS AND
                     ASSIGNS
LENDER:              SUNTRUST MORTGAGE, INC

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF HERNANDO COUNTY, FLORIDA
RECORDED: 11/2/05 IN BOOK/VOLUME/LIBER: 2134 PAGE: 1603 DOCUMENT: 2005097185

PROPERTY SUBJECT TO LIEN: 27035 OLD SPRING LAKE RD, BROOKSVILLE, FL 34602

ALL DOCUMENTARY STAMP TAXES DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE
PURSUANT TO s.201.22 F.S. HAVE BEEN PAID

TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID MORTGAGE AND ALSO ALL
RIGHTS ACCRUED OR TO ACCRUE UNDER SAID MORTGAGE.

DATED: __7/9/18__          GDBT I TRUST 2011-1

                           BY: _____
                           NAME: ANTHONY MANN
                           TITLE: VICE PRESIDENT

STATE OF Colorado ) SS:
COUNTY OF Denver

ON __July 9_____, 2018, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND
FOR SAID STATE, PERSONALLY APPEARED _Anthony Mann, Vice President_
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY
EVIDENCE) TO BE THE DULY AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT
ON BEHALF OF THE _____ LLC_____, AND ACKNOWLEDGED TO ME THAT SUCH
_Vice President_ EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.

WITNESS MY HAND AND OFFICIAL SEAL.

_____              ┌─────────────────────┐
                                       │ BRADLEY M TRU       │
NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE │ NOTARY PUBLIC │
MY COMMISSION EXPIRES: _June 15, 2020_ │ STATE OF COLORADO   │
                                       │ NOTARY ID 20014007244│
                                       │ MY COMMISSION EXPIRES JUNE 15, 2020│
                                       └─────────────────────┘

Florida 1/12

## Exhibit 1

# ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F S 695 25

FOR VALUE RECEIVED, on or before July 20, 2009, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ("Assignor")   whose   address   is _____, assigned, transferred and conveyed to: SUNTRUST BANK, N.A., ("Assignee") whose address is 1001 Semmes Avenue, , Richmond, VA 23224, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated October 25, 2005 and recorded November 02, 2005 in Official Records Book 2134 at Page 1603 of the public records of HERNANDO County, Florida, encumbering the following-described real property:

THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE
NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4: LESS THE EAST 65.57 FEET, OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE WEST 150 FEET OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, ALL IN SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST HERNANDO COUNTY, FLORIDA

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.
   MORTGAGOR(S): WILLIAM P DEBOSKEY, and LORI E. DEBOSKEY

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on
November ___9___, 2009.

_____
Witness
Print Name: Tamar Euell

_____
Witness
Print Name: Sheena Wyatt

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR SUNTRUST MORTGAGE, INC.

By: _____

Print Name: Roxanne E. Lockett .
Title: Vice President

(Affix Corporate Seal)

STATE OF VIRGINIA
CITY OF RICHMOND

BEFORE ME, the undersigned, personally appeared Roxanne E. Lockett as Vice President respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR SUNTRUST MORTGAGE, INC. the ___9___ day of November, 2009.

_____
Notary Public:
My commission expires: 5/31/2011
   Recording requested by, prepared by and return to:
   Maria Zuniga
   Florida Default Law Group, P.L.
   P.O. Box 25018
   Tampa, Florida 33622-5018
   F09078447-SUNTRUST MORTGAGE, INC.

> VASHII ANTHONY
> Notary Public
> Commonwealth of Virginia
> 7092886
> My Commission Expires May 31, 2011

FILE_NUMBER: F09078447

**\*F09078447\***

DOC_ID: M001100

**\*M001100\***

# Exhibit 2

Instr #2011041379 BK:2841 PG:1556 Filed & Recorded:8/12/2011 2:43:32 PM, #Pgs:1
Rec Fees:$10.00    LTC Deputy Clk, Karen Nicolai, Hernando County Clerk of Court

Recording Requested By:
SUNTRUST MORTGAGE, INC.

When Recorded Return To:

Paula Jefferson
SUNTRUST MORTGAGE, INC.
1001 SEMMES AVENUE
RVW 5003 - ΓΟ ΘΟΥ 2649 RENV
RICHMOND, VA 23224
232 86

## CORPORATE ASSIGNMENT OF MORTGAGE

Hernando, Florida
SELLER'S SERVICING #:0034595223 "DEBOSKEY"

MERS #: 180010400345682238  SIS #: 1-888-679-6377

Date of Assignment: July 26th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: SUNTRUST BANK at 303 PEACHTREE STREET N.E., ATLANTA, GA 30318
Executed By: WILLIAM P. DEBOSKEY AND LORI E. DEBOSKEY, HUSBAND AND WIFE To: SUNTRUST MORTGAGE, INC.
Date of Mortgage: 10/25/2005 Recorded: 11/02/2005 in Book/Reel/Liber: 2134 Page/Folio: 1603 as Instrument No.: 2005097185 in the County of Hernando, State of Florida.

Property Address: 27035 OLD SPRING LAKE RD, BROOKSVILLE, FL 34602

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $364,400.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
On July 26th, 2011

By: _____
Janine Ford
Vice President

STATE OF Virginia
COUNTY OF Richmond (City)

On July 26th, 2011, before me, Marlena Williams, a Notary Public in and for City of Richmond in the State of Virginia, personally appeared Janine Ford, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Notary Expires: / /

```
MARLENA WILLIAMS
Notary Public
Commonwealth of Virginia
7209751
My Commission Expires Dec 31, 2812
```
(This area for notarial seal)

Prepared By:
Paula Jefferson, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE, MERS ADMIN RVW 5003, RICHMOND, VA 23224
800-291-0607

*PJFU/SVMT/07/26/2011 03:14:34 AM* SUNTSS23UNTA000000000000001283300* FLHERNA* 0034595223 FLSTATE_MORT_ASSIGN_ASSN* *PJSUNT*

Instr #2013012029 BK:2982 PG:71 Filed & Recorded:3/4/2013 10:54:43 AM,#Pgs:1 Rec
Fees:$10.00    JEP Deputy Clk, Don Barbee Jr, Hernando County Clerk of Court

THIS INSTRUMENT PREPARED BY
AND SHOULD BE RETURNED TO:

Edward A. Storey, III, Esq.
THORNE & STOREY, P.A.
212 Pasadena Place, Suite A
Orlando, FL 32803
(407) 488-1222    R-ENV

For Recording Purposes Only

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, effective November 1, 2012, the undersigned, SUNTRUST BANK, whose address is 1001 Semmes Ave, Richmond, VA 23224 ("Assignor"), by these presents does hereby, sell, assign, transfer and set over to CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, its successors and assigns, whose address is 1610 E. St. Andrews Place, Suite B-150, Santa Ana, CA 92705 ("Assignee"), all its right, title and interest in and to that certain Mortgage with all interest, all liens, any rights due or to become due thereon, executed by WILLIAM P. DEBOSKEY and LORI E. DEBOSKEY, HUSBAND AND WIFE ("Mortgagors"), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SUNTRUST MORTGAGE, INC., dated October 25, 2005, and recorded in Official Records Book 2134, Page 1603, of the Public Records of Hernando County, Florida, securing an original indebtedness in the original principal amount of $364,400.00.

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon and other instruments related to the Mortgage.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed as a sealed instrument by its Servicer and Attorney-in-Fact on this 28 day of JANUARY, 2013.

SUNTRUST BANK
By:    Carrington Mortgage Services, LLC,
       As Attorney-in-Fact

By: _____
Print Name: Adel Issa, Vice President of Special Servicing
Title: for Carrington Mortgage Services, LLC, Attorney In Fact

State of California
County of ORANGE

On JAN 26 2013, before me, ELIZABETH GONZALES, Notary Public (insert name and title of the officer) personally appeared Adel Issa, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ELIZABETH GONZALES
Commission # 1881858
Notary Public - California
Los Angeles County
My Comm. Expires Aug 21, 2013



Return To:
Gulf Coast Title Co., Inc.
111 N. Main Street
Brooksville, FL 34601

T-66339

Doc# 2005097185
Hernando County, Florida
11/02/2005  05:34PM
KAREN NICOLAI, Clerk
RECORDING FEES            $      171.50
MORTGAGE DOC STAMP        $    1,275.40
INTANGIBLE TAX COLLECTIONS      720.80
11/02/2005          Deputy Clk

OFFICIAL RECORDS
BK: 2134 PG: 1683

This document was prepared by:
PAM KONEWKO
SUNTRUST MORTGAGE, INC.
P.O. BOX 156, BROOKSVILLE, FL 34605-0156

——————————————[Space Above This Line For Recording Data]——————————————

AP#: DEB0S0034595223
LN#: 0034595223

# MORTGAGE

MIN 1000104-0034595223-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     October 25, 2005
together with all Riders to this document.

(B) "Borrower" is WILLIAM P. DEBOSKEY and LORI E. DEBOSKEY, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is SUNTRUST MORTGAGE, INC.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010  1/01

-6A(FL) (0005)

Page 1 of 16     MW 05/00     Initials: WPD  LED



VMP MORTGAGE FORMS - (800)521-7291

**Exhibit 3**

Instr #2013012029 BK:2982 PG:71 Filed & Recorded:3/4/2013 10:54:43 AM,#Pgs:1 Rec
Fees:$10.00      JEP Deputy Clk, Don Barbee Jr, Hernando County Clerk of Court

THIS INSTRUMENT PREPARED BY
AND SHOULD BE RETURNED TO:

Edward A. Storey, III, Esq.
THORNE & STOREY, P.A.
212 Pasadena Place, Suite A
Orlando, FL 32803      7-ENV
(407) 488-1222

For Recording Purposes Only

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, effective November 1, 2012, the undersigned,
SUNTRUST BANK, whose address is 1001 Semmes Ave, Richmond, VA 23224 ("Assignor"), by these
presents does hereby, sell, assign, transfer and set over to CHRISTIANA TRUST, A DIVISION OF
WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH
MORTGAGE LOAN TRUST, SERIES 2012-13, its successors and assigns, whose address is 1610 E.
St. Andrews Place, Suite B-150, Santa Ana, CA 92705 ("Assignee"), all its right, title and interest in and
to that certain Mortgage with all interest, all liens, any rights due or to become due thereon, executed by
WILLIAM P. DEBOSKEY and LORI E. DEBOSKEY, HUSBAND AND WIFE ("Mortgagors"), to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SUNTRUST
MORTGAGE, INC., dated October 25, 2005, and recorded in Official Records Book 2134, Page 1603,
of the Public Records of Hernando County, Florida, securing an original indebtedness in the original
principal amount of $354,400.00.

Together with any and all notes and obligations therein described or referred to, the debt
respectively secured thereby and all sums of money due and to become due thereon and other instruments
related to the Mortgage.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed as a sealed
instrument by its Servicer and Attorney-in-Fact on this 28 day of JANUARY , 2013.

SUNTRUST BANK
By:     Carrington Mortgage Services, LLC,
     As Attorney-in-Fact

By: _____
Print Name: _Adel Issa, Vice President of Special Servicing_
Title: _____for Carrington Mortgage Services, LLC, Attorney In Fact_

State of California
County of _ORANGE_ )

On _JAN. 28, 2013_, before me, ELIZABETH GONZALES, Notary Public (insert name and title of
the officer) personally appeared _Adel Issa_, who proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)

ELIZABETH GONZALES
Commission # 1861988
Notary Public - California
Los Angeles County
My Comm. Expires Aug 21, 2013

## Exhibit 4

Instr #2014035166 BK: 3109 PG: 398, Filed & Recorded: 7/8/2014 3:05 PM TT Deputy Clk, #Pgs:3
Don Barbee Jr,Clerk of the Circuit Court Hernando CO FL Rec Fees: $27.00



RECORDING REQUESTED BY AND WHEN
RECORDED MAIL TO:

CARRINGTON MORTGAGE SERVICES LLC.,
1610 E. ST. ANDREW PLACE
SUITE B150
SANTA ANA, CA 92705
ATTN: RECON DEPT

Lo_____   SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

## Assignment of Mortgage

Date of Assignment: 3/27/14

Assignor: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS
TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13

Assignee: GOSHEN MORTGAGE, LLC.

Executed By: WILLIAM P. DEBOSKEY AND LORI E. DEBOSKEY. HUSBAND AND WIFE To
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST
MORTGAGE, INC. Date of Mortgage: 10/25/2005 Recorded 11/02/2005 in Book/Reel/Liber: 2134 Page: 1603
as Instrument/CFN No.: 2005097185 in Official Records of the HERNANDO County, State of FLORIDA

Property Address: 27835 OLD SPING LAKE RD, FROOKSVILLE, FL 34602

SEE ATTACHED LEGAL DESCRIPTION EXHIBIT "A"

KNOW ALL MEN BY THESE PRESENTS  that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named assignor, the receipt and
sufficiency of which is hereby acknowledged, said Assignor here by assigns unto the above-named Assignee, the
said Mortgage, secured thereby, which all moneys now owning or that may hereafter become due or owning in
respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby Grants and conveys unto the said Assignee, the Assignor's beneficial interest under the
Mortgage.

**R-ENV**

SOUTH MILHAUSEN PA
1000 LEGION PLACE
STE 1200
ORLANDO, FL  32801

## Exhibit 5

BK:, 3109 PG: 399

Assignment of Mortgage Page 2 of 2
Loan # [REDACTED]/DEBOSKEY

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in the said Deed of Trust  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written.

Dated: _3/27/14_

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, BY CARRINGTON MORTGAGE SERVICES, LLC., AS ATTORNEY IN FACT

Witness: Cristina Hernández

By: Rob Petruska, Sr. Vice President

State of   CALIFORNIA
County of   ORANGE

On 3/27/14 before me, Irene Torres, Notary Public personally appeared Rob Petruska who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and  acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Irene Torres

IRENE TORRES
COMMISSION #1974461
Notary Public - California
ORANGE COUNTY
My Commission Expires
APRIL 7, 2018

Instr #2018045592 BK: 3607 PG: 1472, Filed & Recorded: 7/26/2018 4:08 PM ERL Deputy Clk, #Pgs:1
Don Barbee Jr,Clerk of the Circuit Court Hernando CO FL Rec Fees: $10.00

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23041 AVENIDA DE LA CARLOTA, #230
LAGUNA HILLS, CA 92653

## ASSIGNMENT OF MORTGAGE

LOAN #: ███████
FOR VALUABLE CONSIDERATION:
ASSIGNOR:        GDBT I TRUST 2011-1

ASSIGNOR ADDRESS: 411 WEST PUTNAM AVENUE
                  GREENWICH, CT 06830

HEREBY GRANTS, ASSIGNS, AND TRANSFERS TO:
ASSIGNEE:        RED STICK ACQUISITIONS, LLC

ASSIGNEE ADDRESS: C/O KC WILSON AND ASSOCIATES
                  23041 AVENIDA DE LA CARLOTA, #230
                  LAGUNA HILLS, CA 92653

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE:
DATED:                10/25/05
ORIGINAL LOAN AMOUNT:  $364,400.00
MORTGAGOR/BORROWER:    WILLIAM P DEBOSKEY AND LORI E DEBOSKEY
ORIGINAL MORTGAGEE:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS
                       NOMINEE FOR THE ORIGINAL LENDER, ITS SUCCESSORS AND
                       ASSIGNS
LENDER:                SUNTRUST MORTGAGE, INC

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF HERNANDO COUNTY, FLORIDA
RECORDED: 11/2/05 IN BOOK/VOLUME/LIBER: 2134 PAGE: 1603 DOCUMENT: 2005097185

PROPERTY SUBJECT TO LIEN: 27035 OLD SPRING LAKE RD, BROOKSVILLE, FL 34602

ALL DOCUMENTARY STAMP TAXES DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE
PURSUANT TO s.201.22 F.S. HAVE BEEN PAID

TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID MORTGAGE AND ALSO ALL
RIGHTS ACCRUED OR/TO ACCRUE UNDER SAID MORTGAGE.

DATED: __7/9/18__        GDBT I TRUST 2011-1

                         BY: _____
                         NAME: ANTHONY MANN
                         TITLE: VICE PRESIDENT

STATE OF Colorado ) SS:
COUNTY OF Denver )

ON __July 9__, 2018, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND
FOR SAID STATE, PERSONALLY APPEARED Anthony Mann, Vice President
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY
EVIDENCE) TO BE THE DULY AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT
ON BEHALF OF THE __LLC.__, AND ACKNOWLEDGED TO ME THAT SUCH
__Vice President__ EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES: June 15, 2020

BRADLEY M TRI
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20014000244
MY COMMISSION EXPIRES JUNE 15, 2020

Florida 1/12

# Exhibit 6



CRITTON | LUTTIER | COLEMAN
LLP

J. Chris Bristow [1,2]
David R. Burchers
Samuel S. Cohen [3]
Gregory W. Coleman, P.A. [4,5]
Mark T. Luttier, P.A.
J. Harley Toufanian [6]

Adelqui J. Benavente
PARALEGAL/INVESTIGATOR
Laurie Sparks Begtrup
Heather Luttier
Shawya McDonald
Ellainne Torres
PARALEGALS

February 25, 2025

[1] Florida Bar Board Certified Business Litigation
[2] Florida Bar Board Certified Civil Trial
[3] Admitted to Practice in Florida and Colorado
[4] Past President The Florida Bar Young Lawyers Division
[5] Past President The Florida Bar
[6] Florida Supreme Court Certified Family Law Mediator

Robert D. Critton, Jr.
(1949-2020)

Michael L. Scheve
(1980-2011)

bill27035@gmail.com
William P. Deboskey
27035 Old Spring Lake Road
Brooksville, FL 34602

**Re:   Red Stick - Response to your February 19, 2025, correspondence**

Dear Mr. DeBoskey:

We are writing to acknowledge receipt of your correspondence dated February 19, 2025, sent to Bruce Crawford regarding loan number 0000325083. Please allow this letter to serve as a formal response to said letter.

As previously advised by prior counsel, your correspondence does not meet the criteria for a Qualified Written Request (QWR) as defined under the Real Estate Settlement Procedures Act (RESPA). A QWR must include a statement of reasons for believing the account is in error or provide sufficient detail regarding information sought about the servicing of the loan.

That aside, we would like to address the concerns raised in your letter. As previously advised by prior counsel, the owner of the referenced loan is Red Stick Acquisitions, LLC, and Statebridge Company is still the servicer for the loan on behalf of the owner.

Mr. Bruce Crawford apologizes for any misunderstanding. His purpose for identifying himself was to express his desire for future settlement discussions and let you know he is the primary investor in Red Stick Acquisitions, LLC. Thank you for bringing your concerns to our attention. If you have any additional questions or require clarification, please do not hesitate to contact our office.

February 25, 2025
Page 2

Very truly yours,

/s/ *Samuel S. Cohen*

Samuel S. Cohen
scohen@lawclc.com

SSC/cjw

303 BANYAN BOULEVARD • SUITE 400 • WEST PALM BEACH, FL 33401 • PHONE: 561-842-2820 • FAX: 561-844-6929 • MAIL@LAWCLC.COM
WWW.LAWCLC.COM



Return To:
Gulf Coast Title Co., Inc.
111 N. Main Street
Brooksville, FL 34601

T-66339

Doc# 2005097185
Hernando County, Florida
11/02/2005    8:34AM
KAREN NICOLAI, Clerk
RECORDING FEES          $      171.50
MORTGAGE DOC STAMP      $    1,275.40
INTANGIBLE TAX COLLECTIONS     728.80
11/02/2005       Deputy Clk

OFFICIAL RECORDS
BK: 2134 PG: 1603

This document was prepared by:
PAM KONEWKO
SUNTRUST MORTGAGE, INC.
P.O. BOX 156, BROOKSVILLE, FL 34605-0156

20/4

AP#: DEBOS0034595223
LN#: 0034595223

————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE

MIN 1000104-0034595223-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     October 25, 2005     , together with all Riders to this document.

**(B) "Borrower"** is WILLIAM P. DEBOSKEY and LORI E. DEBOSKEY, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is SUNTRUST MORTGAGE, INC.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010  1/01

-6A(FL) (0005)
Page 1 of 16     MW 05/00     Initials: WPD LED

VMP MORTGAGE FORMS - (800)521-7291



# Exhibit 8

AP# DEBOS0034595223
LN# 0034595223

Lender is a **Virginia Corporation**
organized and existing under the laws of     **THE STATE OF VIRGINIA**
Lender's address is   **901 Semmes Avenue, Richmond, VA 23224**

**(E) "Note"** means the promissory note signed by Borrower and dated     **October 25, 2005**
The Note states that Borrower owes Lender **Three Hundred Sixty Four Thousand Four Hundred and no/100**      **Dollars**
(U.S. $ **364,400.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     **November 1, 2035**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _WPiD_ _LED_

-6A(FL) (0005)        Page 2 of 16        Form 3010 1/01

OFFICIAL RECORDS
BK: 2134 PG: 1685

AP#: DEBOS0034595223
LN#: 0034595223

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County       [Type of Recording Jurisdiction]
of                          Hernando                         [Name of Recording Jurisdiction]:
THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, LESS THE EAST 65.57 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 AND LESS THE EAST 65.57 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4, AND LESS THE WEST 15.0 FEET OF TH SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4, ALL IN THE SECTION 10, TOWNSHIP 23 SOUTH, RANGE 20 EAST, HERNANDO COUNTY, FLORIDA. SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS OF RECORD.

Parcel ID Number: R10 423 20 0000 0090 0010          which currently has the address of
27035 OLD SPRING LAKE RD                                                          [Street]
BROOKSVILLE                                  [City], Florida     34602     [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005)                        Page 3 of 16          Initials: WPD LED          Form 3010   1/01

OFFICIAL RECORDS
BK: 2134 PG: 1606

AP#: DEB0S0034595223
LN#: 0034595223

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6A(FL) (0005)          Page 4 of 16          Initials: _WPS_ _GED_          Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1607

AP#: DEBOS0034595223
LN#: 0034595223

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0005)                              Page 6 of 16          Initials: WPD  LED          Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1608

AP#: DEB0S0034595223
LN#: 0034595223

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: WPD (EO)

-6A(FL) (0005)         Page 6 of 16         Form 3010  1/01

AP#: DEBDS0034595223
LN#: 0034595223

OFFICIAL RECORDS
BK: 2134 PG: 1689

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005)                    Page 7 of 16          Initials: _____          Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1610

AP#: DEBOS0034595223
LN#: 0034595223

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6A(FL) (0005)                    Page 8 of 16        Initials: WPD LED        Form 3010 1/01

AP#: DEBOS0034595223
LN#: 0034595223

**OFFICIAL RECORDS
BK: 2134 PG: 1611**

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(FL) (0005)                     Page 8 of 16                     Initials: WPO LtD                     Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1612

AP#: DEBOS0034595223
LN#: 0034595223

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005)          Page 10 of 16          Initials: UPA LGD          Form 3010   1/01

**OFFICIAL RECORDS**
**BK: 2134 PG: 1613**

AP#: DEB0S0034595223
LN#: 0034595223

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6A(FL) (0005)        Page 11 of 16        Initials: _WPD_ _LED_        Form 3010   1/01

OFFICIAL RECORDS
BK: 2134 PG: 1614

AP#: DEB0S0034595223
LN#: 0034595223

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

-8A(FL) (0005)　　　　　　　　Page 12 of 16　　　　Initials: WPO (ED)　　　　Form 3010　1/01

AP#: DEBDS0034595223
LN#: 0034595223

**OFFICIAL RECORDS
BK: 2134 PG: 1615**

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: WPS LED

-6A(FL) (0005)          Page 13 of 16          Form 3010  1/01

AP#: DEBOS0034595223
LN#: 0034595223

BREICIAM RECORDS6
OFFICIAL RECORDS
BK: 2134 PG: 1616

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005)                    Page 14 of 16              Initials: WPD WED          Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1617

AP#: DEBOS0034595223
LN#: 0034595223

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_Ami Ratliff_ (signature)
AMI RATLIFF

_William P. DeBoskey_ (signature)              (Seal)
WILLIAM P. DEBOSKEY                         -Borrower

27035 OLD SPRING LAKE RD, BROOKSVILLE, FL 34602
                                                            (Address)

_Gretchen Wilson_ (signature)
Gretchen Wilson

_Lori E DeBoskey_ (signature)                 (Seal)
LORI E. DEBOSKEY                            -Borrower

27035 OLD SPRING LAKE RD, BROOKSVILLE, FL 34602
                                                            (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                  -Borrower

(Address)                                  (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                  -Borrower

(Address)                                  (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                  -Borrower

(Address)                                  (Address)

-6A(FL) (0005)                Page 16 of 16                Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1618

AP#: DEBOS0034595223
LN#: 0034595223

STATE OF FLORIDA,                              Hernando  County ss:
  The foregoing instrument was acknowledged before me this    Oct. 25, 2005              by
  William P. Deboskey & Lori E. Deboskey

who is ~~personally known to me~~ or who has produced    FLORIDA DR. LIC        as identification.

                                              Ami Ratliff
                                         Notary Public

                    AMI RATLIFF
                MY COMMISSION # DD 451450
                  EXPIRES: August 26, 2009
              Bonded Thru Notary Public Underwriters

                                         Initials: LDPS WD
-6A(FL) (0005)           Page 18 of 18                Form 3010  1/01

OFFICIAL RECORDS
BK: 2134 PG: 1619

AP# DEBOS0034595223
LN# 0034595223

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 25th    day of   October, 2005
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to SUNTRUST MORTGAGE, INC.,
A VIRGINIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:
     27035 OLD SPRING LAKE RD    ,BROOKSVILLE,FL 34602
               [Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial fixed interest rate of     6.3750     %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of    November, 2015     , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."   Current Index   4.5510

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family -
Fannie Mae Uniform Instrument
Form 3187 6/01**
-168R (0401).01
Page 1 of 4     Initials: _WD_ _(e)_
  VMP Mortgage Solutions, Inc.
     (800)521-7291



OFFICIAL RECORDS
BK: 2134 PG: 1620

AP# DEBOS0034595223
LN# 0034595223

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter percentage points ( 2.2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.3750 % or less than 2.2500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.3750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

-168R (0401).01                    Page 2 of 4                    Initials: _____    Form 3187 6/01

OFFICIAL RECORDS
BK: 2134 PG: 1621

AP# DEBOS0034595223
LN# 0034595223

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Initials: _WPD_ _LED_

168R (0401).01          Page 3 of 4          Form 3187 6/01

OFFICIAL RECORDS
BK: 2134 PG: 1622

AP# DEBOS0034595223
LN# 0034595223

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
-Borrower

_William P. Deboskey_____ (Seal)
WILLIAM P. DEBOSKEY        -Borrower

_____ (Seal)
-Borrower

_Lori E. DeBoskey_____ (Seal)
LORI E. DEBOSKEY           -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

-16BR (0401).01          Page 4 of 4          Form 3187 6/01

# Exhibit 3

**IN THE CIRCUIT COURT OF THE 5TH JUDICIAL
CIRCUIT IN AND FOR HERNANDO COUNTY, FLORIDA**

WILLIAM P. DEBOSKEY,

CASE NO.: 25-CA-0474

      Plaintiff,

v.

INSTR #2025057213 BK: 4598 PG: 1277 Page 1 of 2
FILED & RECORDED 8/14/2025 2:47 PM CAS Deputy Clk
Doug Chorvat, Jr., HERNANDO County Clerk of the Circuit Court
Rec Fees: $18.50

TRUIST FINANCIAL CORPORATION;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; THE BRYAN MAWR TRUST
COMPANY OF DELAWARE; GOSHEN
MORTGAGE LLC.; GOSHEN MORTGAGE,
LLC, as separate trustee for GDBT-1 TRUST
2011-1; REDSTICK ACQUISITIONS LLC.
and BRUCE CRAWFORD, an individual,

      Defendants.

_____/

**DEFENDANT TRUIST FINANICAL CORPORATION'S
DISCLAIMER OF INTEREST IN THE SUBJECT REAL PROPERTY**

I, _Sharon Kinney_ on behalf of TRUIST BANK[1], declare as follows:

1.    I am _Vice President_ of TRUIST BANK ("***Truist***"). In that position, my

duties include reviewing Truist's books and records in relation to litigated matters such as this

case. In my aforementioned capacity, I can attest to the business records of Truist, as they relate

to certain documents, including, loan documents, customer files, correspondences, payment

histories, account notes and related servicing notes, and other customer account documents

associated with a real estate loan (the "Loan") and mortgage encumbering the real property located

at 27035 Old Spring Lake Road, Brooksville, FL 34602 (as described in the First Amended

Verified Complaint to Quiet Title and for Declaratory Relief, the "Subject Property") relating to a

_____

[1] Truist Financial Corporation is incorrectly named as a defendant in this action. The correct successor in interest to
SunTrust Mortgage, Inc., which allegedly originated the loan and mortgage which is the subject of this action, is Truist
Bank.

CASE NO: 25-CA-0474

loan provided Plaintiff, William P. DeBoskey ("Plaintiff"), referenced in the First Amended

Verified Complaint to Quiet Title and for Declaratory Relief ("Complaint").

2.      This Disclaimer of Interest is based upon my personal knowledge of facts as stated

herein, based on my review of the memoranda, reports, records and data compilations ("Records")

of Truist and all documents related to the Loan. The Records were made at or near the time of the

occurrence of the facts or events reflected therein by, or from information transmitted by, persons

with knowledge of the facts or events reported and whose regular practice it was to make and keep

the Records in the course of the regularly conducted business activities of Truist. I routinely rely

on the Records in the usual course of my business and the business of Truist.

3.      Truist hereby disclaims any and all interests, claims and liens in and to the real

property located at 27035 Old Spring Lake Road, Brooksville, FL 34602 (the "Subject Property")

at issue in the above-styled quiet title action by virtue of that certain Mortgage recorded on

November 2, 2005 in Official Records Book 2134, Page 1603 of the Public Records of Hernando

County, Florida.

Under penalties of perjury, I declare that I have read the foregoing Disclaimer of Interest

and that the facts stated in it are true

Dated this _16th_ day of July, 2025.

**TRUIST BANK**

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY: _C Seaver_ D.C.

THIS _14_ DAY OF _AUG_ 20 _25_

Print Name: _Sharon Kirven_

Title: _Vice President_

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL
CIRCUIT IN AND FOR HERNANDO COUNTY, FLORIDA

WILLIAM P. DEBOSKEY,

       Plaintiff,

v.

MERS FINANCIAL CORPORATION;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; THE BRYAN MAWR TRUST
COMPANY OF DELAWARE; GOSHEN
MORTGAGE LLC.; GOSHEN MORTGAGE,
LLC, as separate trustee for GDBT-1 TRUST
2011-1; REDSTICK ACQUISITIONS LLC.
and BRUCE CRAWFORD, an individual,

       Defendants.

_____/

CASE NO.: 25-CA-0474

INSTR #2025057214 BK: 4598 PG: 1279 Page 1 of 2
FILED & RECORDED 8/14/2025 2:47 PM CAS Deputy Clk
Doug Chorvat, Jr., HERNANDO County Clerk of the Circuit Court
Rec Fees: $18.50

## DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S DISCLAIMER OF INTEREST IN THE SUBJECT REAL PROPERTY

I, _David P. Gray_, on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., declare as follows:

1.    I, the undersigned, am authorized to provide this Verification on behalf of the Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") related to the real estate loan (the "Loan") and mortgage encumbering the real property located at 27035 Old Spring Lake Road, Brooksville, FL 34602 (as described in the First Amended Verified Complaint to Quiet Title and for Declaratory Relief, the "Subject Property") relating to a loan provided Plaintiff, William P. DeBoskey ("Plaintiff"), referenced in the First Amended Verified Complaint to Quiet Title and for Declaratory Relief ("Complaint").

2.    This Disclaimer of Interest is based upon my personal knowledge of facts as stated herein, based on my review of the memoranda, reports, records and data compilations ("Records") of MERS and all documents related to the Loan. The Records were made at or near the time of the

CASE NO: 25-CA-0474

occurrence of the facts or events reflected therein by, or from information transmitted by, persons

with knowledge of the facts or events reported and whose regular practice it was to make and keep

the Records in the course of the regularly conducted business activities of MERS. I routinely rely

on the Records in the usual course of my business and the business of MERS.

3.      MERS hereby disclaims any and all interests, claims and liens in and to the real

property located at 27035 Old Spring Lake Road, Brooksville, FL 34602 (the "Subject Property")

at issue in the above-styled quiet title action by virtue of that certain Mortgage recorded on

November 2, 2005 in Official Records Book 2134, Page 1603 of the Public Records of Hernando

County, Florida.

Under penalties of perjury, I declare that I have read the foregoing Disclaimer of Interest

and that the facts stated in it are true.

Dated this  1st  day of  August  , 2025.

MORTGAGE   ELECTRONIC   REGISTRATION
SYSTEMS, INC.

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY:  C. Seaver  D.C.

THIS  14  DAY OF AUG 20 25

Print Name:  DAVID P. BRAY

Title:  Vice President

# Exhibit 4

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA**

WILLIAM P. DEBOSKEY

      Plaintiff

v.                                   CASE NO.: 2025-CA-474

TRUIST FINANCIAL CORPORATION, et al

      Defendants

_____/

## <u>CLERK'S DEFAULT</u>

A default is entered against **GDBT-1 Trust 2011-1** for failure to file or serve

any paper as required by law in response to the complaint filed in the above-styled

cause.

DATED this _____8th_____ day of ____July____, 2025.

_____
**CLERK OF COURT**
Hernando County, Florida

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY _____ D.C.

THIS ___18___ DAY OF __July__ 20_25_

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR HERNANDO COUNTY, FLORIDA

WILLIAM P. DEBOSKEY

     Plaintiff

v.                           CASE NO.: 2025-CA-474

TRUIST FINANCIAL CORPORATION, et al

     Defendants

_____/

### CLERK'S DEFAULT

A default is entered against **Goshen Mortgage, LLC.** for failure to file or serve any paper as required by law in response to the complaint filed in the above-styled cause.

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY _____ D.C.

THIS 18 DAY OF JULY 20 25

DATED this ___8th___ day of ___July___, 2025.

_____
CLERK OF COURT
Hernando County, Florida

Filing # 227064520 E-Filed 07/11/2025 11:57:44 AM

# IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
# IN AND FOR HERNANDO COUNTY, FLORIDA

WILLIAM P. DEBOSKEY

      Plaintiff

v.                                    CASE NO.: 2025-CA-474

TRUIST FINANCIAL CORPORATION, et al

      Defendants

_____/

## CLERK'S DEFAULT

A default is entered against **Bryn Mawr Trust Company of Delaware** for

failure to file or serve any paper as required by law in response to the complaint

filed in the above-styled cause.

DATED this / 4ᵗʰ day of July, 2025.

CLERK OF COURT
Hernando County, Florida

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY: _____ D.C.

THIS 18 DAY OF JUL 20 25

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR HERNANDO COUNTY, FLORIDA

WILLIAM P. DEBOSKEY

      Plaintiff

v.                                      CASE NO.: 2025-CA-474

TRUIST FINANCIAL CORPORATION, et al

      Defendants

_____/

### CLERK'S DEFAULT

A default is entered against **Bruce Crawford, an individual,** for failure to

file or serve any paper as required by law in response to the complaint filed in the

above-styled cause.

DATED this _11th_ day of _June_, 2025.

CLERK OF COURT
Hernando County, Florida

CERTIFIED TO BE A TRUE COPY
DOUG CHORVAT, JR.
CLERK OF COURTS

BY:_____ D.C.

THIS_18___DAY OF JULY 20_25_

# Exhibit 5



B1040 (FORM 1040) (12/24)

**FILED TPA INTAKE USBC**
**3 NOV 2025 AM 9:58**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>William Paul DeBoskey | DEFENDANTS<br><br>Red Stick Acquisitions, LLC. et al |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>William P. DeBoskey<br>27035 Old Spring Lake Road<br>Brooksville, Florida 34602    352-263-3384 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br><br>Adversary complaint to determine  Validity, Priority or Extent of Lien, Injunctive Relief and  Declaratory Judgment |
|---|

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☐ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability – §523(a)(5), domestic support
☐ 68-Dischargeability – §523(a)(6), willful and malicious injury
☐ 63-Dischargeability – §523(a)(8), student loan
☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☑ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought<br><br>    Title quieted in favor of debtor | |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>    William Paul DeBoskey | BANKRUPTCY CASE NO.<br> | 25-bk-07792 |
| DISTRICT IN WHICH CASE IS PENDING<br>    Middle District of Florida | DIVISION OFFICE<br>    Tampa | NAME OF JUDGE<br>    Roberta A. Colton |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>    *William P. DeBoskey* | | |
| DATE<br><br>    November 3, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>    William Paul DeBoskey | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.